**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250568-U

Order filed July 17, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| ST. CHARLES SQUARE LIMITED PARTNERSHIP, LLC, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) ) | Du Page County, Illinois, |
| | ) ) | Appeal No. 3-25-0568 |
| v. | ) ) | Circuit No. 25-EV-2515 |
| KENNETH CODY and JOHNATHAN CODY, | ) ) | Honorable Leah M. Bendik, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Brennan and Justice Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court's finding that the defendants breached their lease agreement was against the manifest weight of the evidence.

¶ 2     The plaintiff, St. Charles Square Limited Partnership, LLC (St. Charles Square), filed an eviction complaint against the defendants, Kenneth and Johnathan Cody. St. Charles Square alleged a breach of the lease agreement based on an incident that allegedly occurred between

Johnathan and another tenant. The court granted the eviction, and Kenneth and Johnathan appealed.

¶ 3                                    I.  BACKGROUND

¶ 4        Kenneth and Johnathan Cody signed a lease agreement to rent an apartment from St. Charles Square on April 13, 2019. Kenneth and Johnathan are brothers, and Johnathan suffers from bipolar disorder. Kenneth helped care for his brother, monitoring his medication and providing transportation to and from doctors' appointments. Kenneth and Johnathan renewed their lease on June 26, 2025.

¶ 5        Paragraph 17 of the lease agreement prohibited tenants from "[b]ehaving in a loud, obnoxious manner, disturbing the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community…engaging in or threatening violence." On August 18, 2025, the building's property manager, Carrie Picciona, served Kenneth and Johnathan with a 10-day notice that their tenancy was being terminated for violating paragraph 17 of the lease agreement (10-day notice). The 10-day notice stated that the violations arose from

> "multiple and ongoing complaints from one or more residents of [Johnathan] allegedly engaging in disturbing, harassing, and/or threatening behavior, including but not limited to continuously knocking on another resident's door and attempting to engage in conversation with said resident after they repeatedly expressed unwillingness to interact further, most recently on or about August 14, 2025 but since on or about September 18, 2024, resulting in the involvement of the Carol Stream Police Department."

2

¶ 6      On September 4, 2025, St. Charles Square filed a forcible entry and detainer suit based on the alleged violation of the lease agreement, and the case proceeded to trial on October 7, 2025. At trial, Picciona testified that she had not personally interacted with Johnathan or Kenneth since before they signed to renew their lease agreement on June 26, 2025. She began to testify that she had received complaints from other residents about Johnathan's behavior, but the court sustained a hearsay objection.

¶ 7      Picciona stated that Kenneth told her that Johnathan suffered from bipolar disorder and that he was "off his medication" about a year prior to the 10-day notice. With respect to the violation of the lease agreement, Picciona testified that on August 14, 2025, she received an e-mail from a tenant, and that afterward she called her boss, who agreed that they needed to start the process of evicting Kenneth and Johnathan. She did not testify to the contents of the e-mail she received. However, she stated that the police department came to the property.

¶ 8      St. Charles Square admitted a copy of the 10-day notice. Picciona verified the language contained in the notice when the attorney for St. Charles Square read the notice aloud. Picciona then testified that she had received a complaint about Johnathan on September 18, 2024, in a different e-mail from "a resident." She did not describe the details of that complaint or any actions she took as a result of that complaint. She stated that a resident terminated her lease early and left the property because of the August 14, 2025, incident.

¶ 9      Picciona then confirmed that after serving the 10-day notice, she met with Kenneth, who informed her that Johnathan had been hospitalized, and he was not taking his medication. She stated that Kenneth sent her several e-mails requesting a "reasonable accommodation" and not to be evicted. Picciona confirmed she had had no other interactions with Kenneth or Johnathan that had not been discussed.

¶ 10       Kenneth testified. He denied telling Picciona that Johnathan was not taking his medication. He denied witnessing any incidents between his brother and a neighbor. Nonetheless, he testified that he met with police on August 15, 2025. He and the police agreed that neither he nor his brother would have contact with the person who called the police. He also testified that Johnathan had a manic episode on August 18, 2025 (four days after the police were called), wherein he was "not himself," and he was speaking to himself. Kenneth called paramedics, and Johnathan voluntarily went with them to the hospital where he received treatment.

¶ 11       The court questioned Kenneth about whether Johnathan had left the apartment unaccompanied on August 14, 2025, and Kenneth responded that Johnathan had left to take the garbage out. The court asked Kenneth to confirm whether Johnathan left the house to take out the garbage, and, when Kenneth hesitated, the court offered, "or you can tell me why he left the residence without you that day if you want to explain it in another way. Do you remember why he left that day?" Kenneth told the court that he did not wish to mix up the dates and that he had made "a mistake of saying that." He then stated that Johnathan did not leave the apartment on August 14, 2025.

¶ 12       Kenneth further stated that on August 14, 2025, the complaining tenant came to their door. Kenneth began to relate what this neighbor told him, but a hearsay objection to that statement was sustained. Kenneth testified that when the neighbor came to the door he apologized for "any kind of un-comfort" and told them they were "doing the best we can to make sure everything is okay with that situation."

¶ 13        Johnathan testified, but he did not describe anything that occurred on August 14, 2025. Instead, he confirmed that he had a manic episode on August 18, 2025, which required him to be hospitalized.

¶ 14        Kenneth and Johnathan argued that Kenneth's requests to "pause the eviction" and "implement a treatment and behavioral plan" constituted a request under the Fair Housing Act (42 U.S.C.A. § 3604(f)(3)(B) (West 2024)) and that St. Charles Square's failure to engage in an interactive process constituted an affirmative defense to the eviction.

¶ 15        The court found that Picciona's testimony was sufficient to establish a violation of the lease by a preponderance of the evidence. It also found Kenneth's testimony that Johnathan never left the house to be "implausible," and the long pause Kenneth took when he was asked follow-up questions by the court led the court to "question the veracity of his testimony." It held that the fact that Kenneth agreed to discourage contact between Johnathan and the neighbor further corroborated St. Charles Square's case. Finally, it held that St. Charles Square did not have a duty to engage with Kenneth and Johnathan's requests to pause the eviction proceedings. It entered judgment in favor of St. Charles Square under the Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-106 (West 2024)), and Kenneth and Johnathan appealed.

¶ 16                                      II. ANALYSIS

¶ 17        On appeal, Kenneth and Johnathan argue (1) the circuit court's finding that they breached the lease was against the manifest weight of the evidence and (2) St. Charles Square failed to comply with the Fair Housing Act by failing to engage in an interactive process and make reasonable accommodations for Johnathan's disability. Because we find the first claim dispositive, we decline to address the second.

¶ 18 A plaintiff seeking relief under the Act must file a complaint stating that it is entitled to possession of the premises at issue and the defendant unlawfully withholds possession of the premises. 735 ILCS 5/9-106 (West 2024). At trial, the plaintiff must then prove the allegations contained in its complaint by a preponderance of the evidence. 735 ILCS 5/9-109.5 (West 2024).

¶ 19 Our standard of review under the Act is whether the court's ruling was against the manifest weight of the evidence. *Teton, Tack and Feed, LLC v. Jiminez*, 2016 IL App (1st) 150584, ¶ 11. The court, as a trier of fact, is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive. *Bazydlo v. Volant*, 164 Ill. 2d 207, 214 (1995). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001). Our role as a reviewing court is not to re-interpret the evidence but to determine whether the evidence on record supports the lower court's judgment. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003). A landlord must prove that the lease agreement was "materially" or "substantially" breached to justify a premature termination or forfeiture of the lease agreement. *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 222-23 (2002).

¶ 20 Here, the lease agreement provided that Kenneth and Johnathan were prohibited from "[b]ehaving in a loud, obnoxious manner, disturbing the rights, comfort, health, safety, or convenience of others *** in or near the apartment community…engaging in or threatening violence." St. Charles Square alleged in its 10-day notice and in its subsequent complaint that Johnathan violated the lease agreement by harassing a neighbor on August 14, 2025. However, none of the evidence admitted at trial established what actions, if any, Johnathan took to violate the lease.

6

¶ 21        St. Charles Square offered no testimony from any neighbor, police officer, or anyone with any personal knowledge of what occurred on August 14, 2025. Instead, St. Charles Square relied on the testimony of the property manager, Picciona, admissions from Kenneth, and the 10-day notice itself to prove that Johnathan violated the lease agreement. Picciona was not a witness to the alleged interaction that took place on August 14, 2025, Kenneth denied any violations of the lease agreement occurred, and the 10-day notice was not itself evidence of a violation. See *Ford v. Seagrou, LLC*, 2018 IL App (2d) 170489-U, ¶ 37 (landlord unable to prove material breach of a lease agreement by relying solely on the 10-day notice, which set forth allegations but was not itself evidence).

¶ 22        Picciona's testimony about an e-mail she received in September of 2024 from a different tenant did not establish any violations of the lease agreement. She did not describe the contents of that message. Neither did her testimony about the incident that allegedly took place on August 14, 2025, establish any violations of the lease agreement. She did not describe the contents of the message she received about that complaint either. In both cases, she was properly prohibited from offering hearsay testimony about those messages. None of her testimony described what happened or what Johnathan did or failed to do that violated the lease agreement, which was appropriate because Picciona was not a witness to anything that took place on August 14, 2025. Her testimony was therefore not sufficient to establish a violation of the lease agreement.

¶ 23        Kenneth's "admissions" are similarly unavailing. Kenneth was apparently approached by a neighbor on August 14, 2025. The contents of that neighbor's statements were properly barred as hearsay. Kenneth testified that a) Johnathan left the apartment, although he later retracted that statement, and b) he apologized to the neighbor for any potential discomfort his brother may have caused. Although the court deemed Kenneth's testimony about Johnathan's whereabouts

7

not to be credible, none of Kenneth's testimony established what occurred on August 14, 2025, let alone whether the lease agreement was breached due to harassment.

¶ 24 We reject St. Charles Square's assertion that the trial court "could reasonably infer that a disturbing incident occurred between Johnathan and the other tenant." The facts that (1) Picciona received an e-mail, (2) police arrived at the building at the request of another tenant, and (3) Kenneth agreed to keep Johnathan away from the other tenant might reasonably suggest that *something* happened on August 14, 2025. However, it was St. Charles Square's burden to prove what happened, and that what occurred was a material violation of the lease agreement. 735 ILCS 5/9-109.5 (West 2024). We find the fact that some unknown event upset an unknown tenant insufficient to prove by a preponderance of the evidence that Kenneth or Johnathan violated the lease agreement.

¶ 25 St. Charles Square's failure to offer evidence supporting its claim should have precluded entry of judgment in favor of St. Charles Square. The court's factual findings as to this matter were therefore not based on the evidence produced at trial. As such, they were against the manifest weight of the evidence and must be reversed. *Sullivan*, 321 Ill. App. 3d at 154.

¶ 26                                    III. CONCLUSION

¶ 27 For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County.

¶ 28 Reversed.